FILED
CHARLOTTE, NC

SEP 10 2021

US DISTRICT COURT
WESTERN DISTRICT OF NC

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | DOCKET NO. 5:21 cr 63 - KDB |
| v. | **BILL OF INFORMATION** |
| JAMES PATTERSON, Defendant | Violation: 18 U.S.C. § 371 |

**THE ACTING UNITED STATES ATTORNEY CHARGES THAT:**

**INTRODUCTION**

At all times material to this Bill of Information:

1. Beginning no later than April 19, 2018 and continuing until on or about September 23, 2020, in Wilkes County, North Carolina, within the Western District of North Carolina and elsewhere, the defendant, JAMES PATTERSON (PATTERSON) conspired and agreed with Roger Nance a/k/a "Buck Nance" (Buck Nance), Clifton Ray Anderson, Jr. (Anderson); and Huie Kenneth Nicholson (Nicholson), and others unknown to the Acting United States Attorney to operate and maintain an illegal still in Wilkes County for the production of over 9,000 gallons of untaxed liquor, also known as moonshine, which they transported in interstate commerce to Virginia for sale and distribution, resulting in a total federal and state excise and sales tax loss in excess of $100,000.

*Relevant Individuals and Entities*

2. PATTERSON was a resident of Dinwiddie, Virginia who began purchasing moonshine from Buck Nance in and around 2018. Buck Nance replaced PATTERSON's previous source of untaxed liquor.

3. Buck Nance, a co-conspirator charged elsewhere, conspired and agreed with Anderson and others known and unknown to the Acting United States Attorney to build and operate an illegal still at a certain farm in Wilkes County, North Carolina (hereinafter the "Wilkes County barn") to produce moonshine that he purchased and delivered to PATTERSON in and near Stony Creek, Virginia without the payment of excise taxes due to the United States, the State of North Carolina, and the Commonwealth of Virginia.

4. Anderson, a co-conspirator charged elsewhere, established and operated an illegal still at the Wilkes County barn which produced hundreds of gallons of moonshine per week, which moonshine was purchased by Buck Nance.

Case 5:21-cr-00063-KDB-DCK   Document 1   Filed 09/10/21   Page 1 of 7

5. Nicholson, a co-conspirator charged elsewhere, drove white vans provided by Buck Nance to pick up moonshine in plastic jugs from the still operated by Anderson and Buck Nance in Wilkes County, North Carolina, which moonshine Nicholson transported in interstate commerce to a certain shed known to the Acting United States Attorney in and near Stony Creek, Virginia (hereinafter "the Virginia stash house"). PATTERSON paid and caused Buck Nance and Nicholson to be paid approximately $20 in cash for each gallon of moonshine they delivered to Virginia.

6. Person #1, a resident of Wilkes County, made approximately three deliveries of moonshine in 2019 from Wilkes County to the Virginia stash house.

### *The Moonshine Industry:*

7. "Moonshine" is illegal liquor on which federal and state excise taxes have not been paid. Other words commonly used to describe untaxed liquor include "shine," "corn," "corn liquor," and "bootleg."

8. Moonshine is manufactured in stills, which consist of one or more pots. Still pots are typically made from galvanized metal or aluminum and have wooden sides.

9. At a minimum, a still pot requires sugar, yeast, malt, water, and heat to produce moonshine. Sugar is the primary ingredient used in making moonshine, and an average of 100 pounds of sugar is added for each 100 gallons of pot capacity. Thus, an 800-gallon still pot would use up to eight 100-pound sacks of sugar.

10. When all the ingredients are mixed into the still pot, the still pot has been "mashed in." The still pot is monitored for temperature and stirred periodically, usually by "still hands" hired by the owner/operator of the still. When the yeast has converted the sugar to alcohol, the still pot is "run" by boiling off the alcohol into a cooling box. The alcohol is transferred to a proofing barrel, where batches of moonshine are mixed to adjust the final "proof," also known as the concentration, of the alcohol. Moonshine is typically 100 proof, which is 50% alcohol. A run typically takes between five to nine days.

11. Most stills produce at least 12 gallons of moonshine for every 100-pound sack of sugar. Thus, an 800-gallon still pot would produce approximately 96 gallons of moonshine for each run.

12. Once the moonshine is in its final form, it is usually transferred to containers for sale. One-gallon plastic jugs are commonly used in the moonshine business. The plastic jugs used for moonshine appear similar to ordinary milk jugs but are made with heavier plastic and are known as industrial gallons. The heavier plastic is necessary so that the jugs, when full of moonshine, can be stacked into trucks and transported without breaking.

13. The jugs containing the moonshine are transported to wholesalers and then to retailers for sale to the public in what are commonly known as "shot houses" or "nip joints."

Moonshine is typically sold in case lots to the wholesaler. A case lot consists of six gallons of moonshine.

### *Laws Governing the Manufacture of Alcohol*:

14. The term "distilled spirits" is defined as the substance known as ethyl alcohol, ethanol, or spirits of wine in any form, and a "distiller" is defined as any person who produces distilled spirits from any source or substance (26 U.S.C. § 5002(a)). The term "untaxed liquor" as used in this Bill of Information has the same meaning as the term untaxed "distilled spirits" and "moonshine."

15. Any person can engage in the business of distilling spirits by obtaining a basic permit from the Alcohol & Tobacco Tax & Trade Bureau (the "TTB") (27 U.S.C. § 203(b)) and complying with all requirements such as registration (26 U.S.C. § 5179), providing bond (26 U.S.C. § 5173), if necessary, paying the requisite taxes (26 U.S.C. § 5001(a)), and other requirements.

16. Generally, the tax attaches to distilled spirits as soon as the distilled spirits are made (26 U.S.C. § 5001(b)). The distiller is responsible for paying the tax (26 U.S.C. § 5005(a)), which is payable to the TTB (26 U.S.C. § 5061). The tax owed must be paid at the time the distilled spirits are removed from the bonded premises (26 U.S.C. § 5007). There was, however, a reduced tax rate in effect for calendar years 2018, 2019 and 2020 which became permanent for qualified producers in 2021.

17. The State of North Carolina imposes a tax on distilled liquor.

18. The Commonwealth of Virginia imposes a sales tax on distilled liquor.

## COUNT ONE

Violation: 18 U.S.C. § 371 (Conspiracy to Defraud the United States)

19. Paragraphs 1 through 18 of the Introduction to this Bill of Information are hereby realleged and incorporated into Count One by reference herein.

20. Beginning no later than April 19, 2018, and continuing through at least September 23, 2020, in Wilkes County, within the Western District of North Carolina, and elsewhere, the defendant,

**JAMES PATTERSON**

did knowingly combine, conspire, confederate, and agree with Buck Nance, Anderson, Nicholson, Person #1, and with others known and unknown to the Acting United States Attorney, to:

a. defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful Government functions of the TTB in its regulation of the lawful production and distribution of distilled spirits a/k/a moonshine and the ascertainment, computation, assessment, and collection of the revenue: to wit, excise taxes on distilled spirits;

b. cause other persons to travel in interstate commerce and to knowingly use and cause others to use a facility in interstate commerce, specifically the telephone, all of which acts were done with the intent to promote, manage, establish, carry on, and to facilitate the promotion, management, establishment and carrying on of an unlawful activity, the unlawful activity being a business enterprise involving liquor on which the Federal excise tax has not been paid in violation of Title 26, United States Code, Sections 5001, 5006, and 5601(a)), all in violation of Title 18, United States Code, Section 1952(a)(3); and

c. knowingly receive untaxed liquor, in violation of Title 26, United States Code, Sections 5601(a)(11).

## *OBJECT OF THE CONSPIRACY*

21. The objective of the conspiracy was to produce moonshine in Wilkes County, North Carolina, transport such moonshine in interstate commerce to Virginia, and receive, sell, and distribute such moonshine to PATTERSON in Virginia.

## *MEANS AND METHODS OF THE CONSPIRACY*

22. The means and methods used to carry out the goals of the conspiracy include, but are not limited to, the following:

    a. Anderson would lease the Wilkes County barn from a person known to the Acting United States Attorney and construct a still for the production of moonshine and the operation of a moonshine business. Anderson did not obtain a permit to distill spirits at the Wilkes County barn.

    b. Buck Nance would purchase and deliver materials including bulk sugar to the Wilkes County barn for Anderson's use in distilling moonshine. Buck Nance and Anderson did not register their moonshine distilling business enterprise with the TTB, obtain the required permits from TTB, or inform TTB that a bond may be required to operate a distilling business.

    c. Anderson would distill hundreds of gallons of moonshine, which he would place in plastic jugs provided by Buck Nance. The jugs of moonshine produced by Anderson and Buck Nance were not labeled in any way as required by TTB and did not include excise tax stamps as required by the State of North Carolina.

d. Buck Nance would sell most, if not all, of the moonshine produced by Anderson to PATTERSON in Virginia, making deliveries to Virginia once or twice a week.

e. PATTERSON, a resident of Dinwiddie, Virginia, arranged for the delivery of moonshine to the Virginia stash house in and near Stony Creek, Virginia.

f. Anderson would load cases of moonshine into white vans at the Wilkes County barn. Buck Nance, Nicholson, and Person #1 would drive the moonshine to the Virginia stash house.

g. In Virginia, PATTERSON would pay and cause others to pay Buck Nance, Nicholson, and Person #1 approximately $20 per gallon in U.S. currency for the moonshine he delivered, knowing that required federal and state excise taxes had not been paid and would not be paid.

h. PATTERSON would in turn sell and cause others to sell the illegal moonshine distilled in North Carolina to customers in Virginia for $30 to $50 per gallon without paying required excise taxes.

## *OVERT ACTS*

23. In furtherance of the conspiracy and to affect the objects thereof, at least one of the following overt acts was committed by PATTERSON and his co-conspirators in the Western District of North Carolina and elsewhere:

    a. Beginning no later than April 19, 2018 and continuing until on or about September 23, 2020, Anderson operated a still in the Wilkes County barn with the capacity to make approximately 18,000 gallons of moonshine per year.

    b. On or about each of the dates listed below, PATTERSON purchased at least 20 cases of moonshine distilled by Anderson in the Wilkes County barn and delivered by Buck Nance, Nicholson, or Person #1 to the Virginia stash house. Each case contains six gallons of untaxed moonshine, which equates to 120 gallons per delivery. Each delivery was preceded by a telephone call to PATTERSON from Buck Nance, Nicholson, or Person #1 at the telephone numbers listed below:

|      | DATE       | DRIVER     | TELEPHONE NO.    |
|------|------------|------------|------------------|
| i.   | 10/15/2019 | Buck Nance | (336) XXX-X548   |
| ii.  | 10/23/2019 | Buck Nance | (336) XXX-X548   |
| iii. | 10/28/2019 | Buck Nance | (336) XXX-X548   |
| iv.  | 11/2/2019  | Person #2  | (336) XXX-X859   |
| v.   | 11/7/2019  | Person #2  | (336) XXX-X859   |

|        | DATE       | DRIVER     | TELEPHONE NO.    |
|--------|------------|------------|------------------|
| vi.    | 11/12/2019 | Person #2  | (336) XXX-X859   |
| vii.   | 3/1/2020   | Buck Nance | (336) XXX-X548   |
| viii.  | 3/8/2020   | Buck Nance | (336) XXX-X548   |
| ix.    | 3/20/2020  | Nicholson  | (336) XXX-X673   |
| x.     | 3/27/2020  | Nicholson  | (336) XXX-X673   |
| xi.    | 4/9/2020   | Buck Nance | (336) XXX-X548   |
| xii.   | 4/17/2020  | Nicholson  | (336) XXX-X673   |
| xiii.  | 4/28/2020  | Buck Nance | (336) XXX-X548   |
| xiv.   | 5/5/2020   | Buck Nance | (336) XXX-X548   |
| xv.    | 5/21/2020  | Nicholson  | (336) XXX-X673   |
| xvi.   | 5/28/2020  | Nicholson  | (336) XXX-X673   |
| xvii.  | 6/3/2020   | Buck Nance | (336) XXX-X548   |
| xviii. | 6/6/2020   | Nicholson  | (336) XXX-X673   |
| xix.   | 6/9/2020   | Buck Nance | (336) XXX-X548   |
| xx.    | 6/16/2020  | Nicholson  | (336) XXX-X673   |
| xxi.   | 6/20/2020  | Buck Nance | (336) XXX-X548   |
| xxii.  | 6/29/2020  | Nicholson  | (336) XXX-X673   |
| xxiii. | 7/7/2020   | Buck Nance | (336) XXX-X548   |
| xxiv.  | 7/14/2020  | Buck Nance | (336) XXX-X548   |
| xxv.   | 7/22/2020  | Nicholson  | (336) XXX-X673   |
| xxvi.  | 8/5/2020   | Buck Nance | (336) XXX-X548   |
| xxvii. | 8/16/2020  | Nicholson  | (336) XXX-X673   |
| xxviii.| 8/25/2020  | Nicholson  | (336) XXX-X673   |
| xxix.  | 9/2/2020   | Buck Nance | (336) XXX-X548   |
| xxx.   | 9/8/2020   | Buck Nance | (336) XXX-X548   |
| xxxi.  | 9/17/2020  | Buck Nance | (336) XXX-X548   |
| xxxii. | 9/19/2020  | Nicholson  | (336) XXX-X673   |

All in violation of Title 18, United States Code, Section 371.

## NOTICE OF FORFEITURE

24. Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given of Title 18, United States Code, Section 982 and Title 28, United States Code, Section 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to Title 18, United States Code, Section 981, and all specified unlawful activities listed or referenced in Title 18, United States Code, Section 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

    a. All property which constitutes or is derived from proceeds of the violations set forth in this Bill of Information; and

    b. If, as set forth in Title 21, United States Code, Section 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a).

WILLIAM T. STETZER
ACTING UNITED STATES ATTORNEY

_/s/ Michael E. Savage_
Michael E. Savage
Assistant United States Attorney

7