UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | DOCKET NO. 5:21 cr 00063-KDB-DCK |
| v. | **FACTUAL BASIS** |
| (1) JAMES PATTERSON, Defendant | |

NOW COMES the United States of America, by and through William R. Stetzer, Acting United States Attorney for the Western District of North Carolina, and hereby files this Factual Basis in support of the plea agreement filed simultaneously in this matter.

This Factual Basis is filed pursuant to Local Criminal Rule 11.2 and does not attempt to set forth all of the facts known to the United States at this time. By their signatures below, the parties expressly agree that there is a factual basis for the guilty plea(s) that the defendant will tender pursuant to the plea agreement, and that the facts set forth in this Factual Basis are sufficient to establish all of the elements of the crime(s). The parties agree not to object to or otherwise contradict the facts set forth in this Factual Basis.

Upon acceptance of the plea, the United States will submit to the Probation Office a "Statement of Relevant Conduct" pursuant to Local Criminal Rule 32.4. The defendant may submit (but is not required to submit) a response to the Government's "Statement of Relevant Conduct" within seven days of its submission. The parties understand and agree that this Factual Basis does not necessarily represent all conduct relevant to sentencing. The parties agree that they have the right to object to facts set forth in the presentence report that are not contained in this Factual Basis. Either party may present to the Court additional relevant facts that do not contradict facts set forth in this Factual Basis.

1. Beginning no later than April 19, 2018 and continuing until on or about September 23, 2020, in Wilkes County, North Carolina, within the Western District of North Carolina and elsewhere, the defendant, JAMES PATTERSON (PATTERSON) conspired and agreed with Roger Nance a/k/a "Buck Nance" (Buck Nance), Huie Kenneth Nicholson (Nicholson), and others to transport untaxed liquor, also known as moonshine, in interstate commerce from North Carolina were it was produced in an illegal still in Wilkes County, to Virginia where it was delivered and sold, resulting in a loss of federal and state excise taxes.

### *Relevant Individuals*

2. PATTERSON, defendant herein, was a resident of Dinwiddie, Virginia who began purchasing moonshine from Buck Nance in and around 2018. Buck Nance replaced PATTERSON's previous source of untaxed liquor.

3. Buck Nance, a coconspirator charged elsewhere, conspired and agreed with a person whose identity was not known to PATTERSON (hereinafter the "Still Operator) to build and operate an illegal still at a certain farm in Wilkes County, North Carolina (hereinafter the "Wilkes County barn") to produce moonshine.

4. Buck Nance purchased the moonshine distilled in the Wilkes County barn and delivered it to PATTERSON in and near Stony Creek, Virginia without the payment of taxes due to the United States, the State of North Carolina, and the Commonwealth of Virginia.

5. Nicholson drove white vans provided by Buck Nance to pick up moonshine in plastic jugs from the still in the Wilkes County barn, which moonshine Nicholson transported in interstate commerce to a certain shed in and near Stony Creek, Virginia (hereinafter "the Virginia stash house").

6. PATTERSON paid and caused Buck Nance and Nicholson to be paid approximately $20 in cash for each gallon of moonshine they delivered to Virginia.

7. Person #1, a resident of Wilkes County, made approximately three deliveries of moonshine in 2019 from Wilkes County to the Virginia stash house.

### *The Moonshine Industry:*

8. "Moonshine" is illegal liquor on which federal and state excise taxes have not been paid. Other words commonly used to describe untaxed liquor include "shine," "corn," "corn liquor," and "bootleg."

9. Moonshine is manufactured in stills, which consist of one or more pots. Still pots are typically made from galvanized metal or aluminum and have wooden sides.

10. Once the moonshine is in its final form, it is usually transferred to containers for sale. One-gallon plastic jugs are commonly used in the moonshine business. The plastic jugs used for moonshine appear similar to ordinary milk jugs but are made with heavier plastic and are known as industrial gallons. The heavier plastic is necessary so that the jugs, when full of moonshine, can be stacked into trucks and transported without breaking.

11. The jugs containing the moonshine are transported to wholesalers and then to retailers for sale to the public in what are commonly known as "shot houses" or "nip joints."

2

Case 5:21-cr-00063-KDB-DCK   Document 3   Filed 09/10/21   Page 2 of 7

Moonshine is typically sold in case lots to the wholesaler. A case lot consists of six gallons of moonshine.

## *Laws Governing the Manufacture of Alcohol*:

12. The term "distilled spirits" is defined as the substance known as ethyl alcohol, ethanol, or spirits of wine in any form, and a "distiller" is defined as any person who produces distilled spirits from any source or substance (26 U.S.C. § 5002(a)). The term "untaxed liquor" as used in this Bill of Information has the same meaning as the term untaxed "distilled spirits" and "moonshine."

13. Any person can engage in the business of distilling spirits by obtaining a basic permit from the Alcohol & Tobacco Tax & Trade Bureau (the "TTB") (27 U.S.C. § 203(b)) and complying with all requirements such as registration (26 U.S.C. § 5179), providing bond (26 U.S.C. § 5173), if necessary, paying the requisite taxes (26 U.S.C. § 5001(a)), and other requirements.

14. Generally, the tax attaches to distilled spirits as soon as the distilled spirits are made (26 U.S.C. § 5001(b)). The distiller is responsible for paying the tax (26 U.S.C. § 5005(a)), which is payable to the TTB (26 U.S.C. § 5061). The tax owed must be paid at the time the distilled spirits are removed from the bonded premises (26 U.S.C. § 5007). There was, however, a reduced tax rate in effect for calendar years 2018, 2019 and 2020 which became permanent for qualified producers in 2021.

15. The State of North Carolina imposes a tax on distilled liquor.

16. The Commonwealth of Virginia imposes a sales tax on distilled liquor.

## *The Conspiratorial Agreement*

17. Beginning no later than April 19, 2018 and continuing until on or about September 23, 2020, PATTERSON knowingly agreed with Buck Nance, Nicholson, Person #1, and others known and unknown to the Acting United States Attorney, to:

    (a) defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful Government functions of the TTB in its regulation of the lawful production and distribution of distilled spirits a/k/a moonshine and the ascertainment, computation, assessment, and collection of the revenue: to wit, excise taxes on distilled spirits;

    (b) cause other persons to travel in interstate commerce and to knowingly use and cause others to use a facility in interstate commerce, specifically the telephone, all of which acts were done with the intent to promote, manage, establish, carry on, and to facilitate the promotion, management, establishment and carrying on of an

3

unlawful activity, the unlawful activity being a business enterprise involving liquor on which the Federal excise tax has not been paid in violation of Title 26, United States Code, Section 5001, 5006, and 5601(a)), all in violation of Title 18, United States Code, Section § 1952(a)(3); and

(c) knowingly receive untaxed liquor, in violation of Title 26, United States Code, Sections 5601(a)(11).

## *OBJECT OF THE CONSPIRACY*

18. The object of the conspiracy was to produce moonshine in Wilkes County, North Carolina, transport such moonshine in interstate commerce to Virginia, and receive, sell, and distribute such moonshine to PATTERSON in Virginia.

## *MEANS AND METHODS OF THE CONSPIRACY*

19. The means and methods used to carry out the goals of the conspiracy include, but are not limited to, the following:

    a. The Still Operator would construct a still for the production of moonshine and the operation of a moonshine business. The Still Operator did not obtain a permit to distill spirits at the Wilkes County barn.

    b. The Still Operator would distill hundreds of gallons of moonshine, which he would place in plastic jugs provided by Buck Nance. The jugs of moonshine produced by the Still Operator and Buck Nance were not labeled in any way as required by TTB and did not include excise tax stamps as required by the State of North Carolina.

    c. Buck Nance would sell the moonshine produced at the Wilkes County barn to PATTERSON in Virginia, making deliveries to Virginia once or twice a week.

    d. PATTERSON arranged for the delivery of moonshine to the Virginia stash house in and near Stony Creek, Virginia.

    e. Buck Nance, Nicholson, and Person #1 would drive the moonshine to the Virginia stash house.

    f. In Virginia, PATTERSON would pay and cause others to pay Buck Nance, Nicholson, and Person #1 approximately $20 per gallon in U.S. currency for the moonshine he delivered, knowing that required federal and state taxes had not been paid and would not be paid.

4

g.  PATTERSON would in turn sell and cause others to sell the illegal moonshine distilled in North Carolina to customers in Virginia for $26 to $50 per gallon without paying required taxes.

## *OVERT ACTS*

20. In furtherance of the conspiracy and to affect the objects thereof, at least one of the following overt acts was committed by PATTERSON and his co-conspirators in the Western District of North Carolina and elsewhere:

    a.  Beginning no later than April 19, 2018 and continuing until on or about September 23, 2020, the Still Operator made hundreds of gallons of moonshine in the Wilkes County barn.

    b.  On or about each of the dates listed below, PATTERSON purchased at least 20 cases of moonshine distilled by Anderson in the Wilkes County barn and delivered by Buck Nance, Nicholson, or Person #1 to the Virginia stash house. Each case contains six gallons of untaxed moonshine, which equates to 120 gallons per delivery. Each delivery was preceded by a telephone call to PATTERSON from Buck Nance, Nicholson, or Person #1 at the telephone numbers listed below:

|       | DATE       | DRIVER     | TELEPHONE NO.   |
|-------|------------|------------|-----------------|
| i.    | 10/15/2019 | Buck Nance | (336) XXX-X548  |
| ii.   | 10/23/2019 | Buck Nance | (336) XXX-X548  |
| iii.  | 10/28/2019 | Buck Nance | (336) XXX-X548  |
| iv.   | 11/2/2019  | Person #1  | (336) XXX-X859  |
| v.    | 11/7/2019  | Person #1  | (336) XXX-X859  |
| vi.   | 11/12/2019 | Person #1  | (336) XXX-X859  |
| vii.  | 3/1/2020   | Buck Nance | (336) XXX-X548  |
| viii. | 3/8/2020   | Buck Nance | (336) XXX-X548  |
| ix.   | 3/20/2020  | Nicholson  | (336) XXX-X673  |
| x.    | 3/27/2020  | Nicholson  | (336) XXX-X673  |
| xi.   | 4/9/2020   | Buck Nance | (336) XXX-X548  |
| xii.  | 4/17/2020  | Nicholson  | (336) XXX-X673  |

5

|         | DATE      | DRIVER     | TELEPHONE NO.   |
|---------|-----------|------------|-----------------|
| xiii.   | 4/28/2020 | Buck Nance | (336) XXX-X548  |
| xiv.    | 5/5/2020  | Buck Nance | (336) XXX-X548  |
| xv.     | 5/21/2020 | Nicholson  | (336) XXX-X673  |
| xvi.    | 5/28/2020 | Nicholson  | (336) XXX-X673  |
| xvii.   | 6/3/2020  | Buck Nance | (336) XXX-X548  |
| xviii.  | 6/6/2020  | Nicholson  | (336) XXX-X673  |
| xix.    | 6/9/2020  | Buck Nance | (336) XXX-X548  |
| xx.     | 6/16/2020 | Nicholson  | (336) XXX-X673  |
| xxi.    | 6/20/2020 | Buck Nance | (336) XXX-X548  |
| xxii.   | 6/29/2020 | Nicholson  | (336) XXX-X673  |
| xxiii.  | 7/7/2020  | Buck Nance | (336) XXX-X548  |
| xxiv.   | 7/14/2020 | Buck Nance | (336) XXX-X548  |
| xxv.    | 7/22/2020 | Nicholson  | (336) XXX-X673  |
| xxvi.   | 8/5/2020  | Buck Nance | (336) XXX-X548  |
| xxvii.  | 8/16/2020 | Nicholson  | (336) XXX-X673  |
| xxviii. | 8/25/2020 | Nicholson  | (336) XXX-X673  |
| xxix.   | 9/2/2020  | Buck Nance | (336) XXX-X548  |
| xxx.    | 9/8/2020  | Buck Nance | (336) XXX-X548  |
| xxxi.   | 9/17/2020 | Buck Nance | (336) XXX-X548  |
| xxxii.  | 9/19/2020 | Nicholson  | (336) XXX-X673  |

WILLIAM R. STETZER
ACTING UNITED STATES ATTORNEY

*[Signature: Michael E. Savage]*     9/10/2021

Michael E. Savage
Assistant United States Attorney

6

Case 5:21-cr-00063-KDB-DCK   Document 3   Filed 09/10/21   Page 6 of 7

### Defendant's Counsel's Signature and Acknowledgment

I have read this Factual Basis, the Bill of Information, and the plea agreement in this case, and have discussed them with the defendant. Based on those discussions, I am satisfied that the defendant understands the Factual Basis, the Bill of Information, and the plea agreement. I hereby certify that the defendant does not dispute this Factual Basis.

_David A. Brown, Sr._            DATED: 9/10/2021
David Brown, Sr., Attorney for Defendant

7